# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1737

_____

Alex Braitberg, on behalf of himself and all others similarly situated,

*Plaintiff - Appellant,*

v.

Charter Communications, Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2015
Filed: September 8, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Alex Braitberg sued Charter Communications, Inc., alleging that Charter retained his personally identifiable information in violation of a section of the Cable Communications Policy Act, 47 U.S.C. § 551(e). Charter filed a motion to dismiss

for lack of Article III standing and failure to state a claim. The district court[1] granted the motion, and Braitberg appeals. We heard oral argument and then held the case pending a decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which informs our analysis of Article III standing. We now affirm the judgment.

I.

Alex Braitberg signed up for cable services with Charter Communications, Inc. around July 2007. Charter required Braitberg to provide various items of personally identifiable information, including his address, telephone number, and social security number, to activate the cable services. Braitberg then canceled his cable services around June 2010.

In March 2013, Braitberg contacted Charter and confirmed that Charter retained all of the personally identifiable information he had submitted in July 2007. Braitberg alleged that "Charter's uniform policy and practice has been to retain customer [personally identifiable information] indefinitely, long after customers' accounts have been terminated" and when it is no longer needed for providing services or collecting payments. This indefinite retention, according to Braitberg, is not necessary to satisfy Charter's tax, accounting, or legal obligations.

Braitberg sued on behalf of himself and a class of former Charter customers under the Cable Act. The statute provides that "[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order." 47 U.S.C. § 551(e). Braitberg alleged that Charter's retention of personal information

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

-2-

after it was no longer required to provide services, collect payments, or satisfy tax, accounting, or legal obligations violated the rights of putative class members under the Cable Act.

Braitberg claimed that Charter's failure to destroy customers' personal information injured him and the proposed class members in two ways. First was an alleged "direct invasion of their federally protected privacy rights." Second, Charter allegedly deprived Braitberg and the class of the full value of the services they purchased from Charter. On this theory, Braitberg and others ascribed monetary value to controlling their personal information, and Charter failed to destroy the information as mandated by the Cable Act and by Charter's privacy policy. Braitberg sought an order enjoining Charter from indefinitely retaining former customers' personal information, statutory and punitive damages, and attorneys' fees. Braitberg moved to certify a class.

Charter moved to dismiss on the ground that Braitberg lacked standing under Article III, lacked statutory standing under the Cable Act, and failed to state a claim because he had not alleged damages. The district court convened a hearing on Charter's motion to dismiss on February 12, 2014. At the close of the hearing, the district court issued a minute order dismissing Braitberg's claims without prejudice and dismissing the parties' motions on class certification as moot.

Because there is a question about the timeliness of the appeal, we provide some detail about the docket. The courtroom minute sheet for the hearing was entered on the docket and provided: "Parties present for ORAL Argument RE: Mtns [3] [11] + [13]. Arguments heard. Motion to Dismiss Granted (HEA) Remaining Motions Denied as Moot. Cause Dismissed w/o predjudice [*sic*]." The text on the docket was substantially the same as that contained in the minute sheet, but was followed by the clerk's initials. An automatic Notice of Electronic Filing was generated by the district court's case management and electronic case filing system ("CM/ECF") and

-3-

sent to the parties via electronic mail. The e-mail provided that "[t]he following transaction was entered on 2/12/2014," followed by the same text as the docket entry and the note "WARNING: CASE CLOSED on 02/12/2014."

On March 13, 2014, twenty-nine days after the district court dismissed the claims, Braitberg filed a "Motion to Modify Dismissal Order into an Order of Dismissal with Prejudice," because he thought a dismissal with prejudice was necessary for "a timely appeal." The district court granted this motion on March 14, 2014, and text reflecting the court's disposition was entered on the docket. Braitberg filed a notice of appeal on March 21, 2014, thirty-seven days after the district court dismissed his claims without prejudice at the hearing.

## II.

Charter first contends that Braitberg did not timely file his notice of appeal and that we therefore lack jurisdiction. The district court dismissed Braitberg's claims without prejudice on February 12, 2014. The court did not explicitly grant Braitberg leave to amend the complaint, so its dismissal without prejudice is a "final, appealable order" that triggers the time for filing an appeal or a motion to alter or amend the judgment. *Quartana v. Utterback*, 789 F.2d 1297, 1299-1300 (8th Cir. 1986). Braitberg filed his notice of appeal thirty-seven days after the district court dismissed the suit without prejudice and filed his "Motion to Modify Dismissal Order into an Order of Dismissal with Prejudice" twenty-nine days after that dismissal.

Charter asserts that the notice of appeal was untimely because Federal Rule of Appellate Procedure 4(a)(1)(A) requires the notice to be filed "within 30 days after entry of the judgment or order appealed from," while Braitberg filed his notice thirty-seven days after the district court issued the dismissal without prejudice. Charter also contends that Braitberg's motion to modify the dismissal should be construed as an untimely motion to alter or amend a judgment under Federal Rule of Civil Procedure

-4-

59(e) that did not toll the time for filing a notice of appeal. The company points out that Appellate Rule 4(a)(4) specifies that only "timely" filed motions restart the appeal clock. Charter argues that Braitberg's motion was not timely because Civil Rule 59(e) requires motions to "be filed no later than 28 days after the entry of the judgment," and Braitberg filed his motion twenty-nine days after the district court dismissed the claims without prejudice.

We conclude that Braitberg's notice of appeal was timely for a different reason. The time for filing both a notice of appeal and a motion to alter or amend the judgment does not commence until "entry of the judgment." Fed. R. App. P. 4(a)(1)(A); Fed. R. Civ. P. 59(e). Civil Rule 58(a) provides that "[e]very judgment and amended judgment must be set out in a separate document," with certain exceptions not relevant here. If the separate document requirement applies but is not satisfied, then a judgment or order is deemed "entered" for purposes of the time for filing a notice of appeal and a Rule 59(e) motion when 150 days have run from the entry of the judgment in the civil docket. Fed. R. App. P. 4(a)(7)(A)(ii); Fed. R. Civ. P. 58(c)(2). If judgment here was not entered until 150 days after the docket entry of February 12, 2014, then Braitberg's appeal is timely.

Charter argues that the e-mail sent to the parties on February 12, 2014, which contained the docket text and the warning that the case was closed, satisfied the separate document requirement. We disagree. The separate document requirement "must be 'mechanically applied' in determining whether an appeal is timely . . . to avoid the uncertainties that once plagued the determination of when an appeal must be brought." *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386 (1978) (per curiam) (quotation omitted). We have held that "[n]either the courtroom minute sheet nor the court's docket book constitute a separate document" for purposes of Rule 58(a). *Lupo v. R. Rowland & Co.*, 857 F.2d 482, 484 (8th Cir. 1988).

In this case, the automatic e-mail message generated by the CM/ECF system constituted the provision of notice to the parties required by Civil Rule 77(d)(1). That rule states that "[i]mmediately after entering an order or judgment, the clerk must serve notice of the entry . . . on each party." Fed. R. Civ. P. 77(d)(1); *see Am. Boat Co. v. Unknown Sunken Barge*, 567 F.3d 348, 349-50 & n.3, 352-53 (8th Cir. 2009). Given that the courtroom minute sheet and the docket text do not satisfy the separate document requirement, *see Lupo*, 857 F.2d at 484, an automatically generated notice of the filing of the courtroom minute sheet and entry of the docket text, followed by a reproduction of the docket text, likewise cannot satisfy the requirement.

As the separate document requirement was not satisfied, the district court's judgment is deemed entered 150 days after the judgment was entered in the civil docket on February 12, 2014. Fed. R. App. P. 4(a)(7)(A)(ii); Fed. R. Civ. P. 58(c)(2). Braitberg filed his notice of appeal thirty-seven days after the district court's judgment dismissing the case was entered in the docket, well before the district court's judgment was deemed "entered" and the time for filing a notice of appeal began to run. Although the notice of appeal was filed prematurely, "[a] failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order." Fed. R. App. P. 4(a)(7)(B); *Chambers v. City of Fordyce*, 508 F.3d 878, 881 (8th Cir. 2007) (per curiam). Braitberg's notice of appeal is thus timely and valid.

III.

The parties next dispute whether there is a case or controversy under Article III over which the district court had jurisdiction. Braitberg argues that Charter violated his rights under the Cable Act and that he has standing to sue for redress of that violation. Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. A plaintiff invoking the jurisdiction of the court must adequately allege an injury in fact, an essential element of the "irreducible

constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing" the requisite injury, which must be both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560-61 (quotation omitted). We review a district court's dismissal for lack of standing *de novo*, accepting the material allegations in the complaint as true. *Shain v. Veneman*, 376 F.3d 815, 817 (8th Cir. 2004).

Braitberg contends that a violation of a statutory right constitutes an injury in fact that is sufficient by itself to establish standing under Article III. He asserts that there is no need for him to allege or show any "actual injury" arising from Charter's retention of his personal information. This court's decisions in *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014), and *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013), seemed to accept that view. *Hammer*, citing *Charvat* and *Warth v. Seldin*, 422 U.S. 490, 500 (1975), declared that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*." 754 F.3d at 498.

In *Spokeo*, however, the Supreme Court rejected this absolute view and superseded our precedent in *Hammer* and *Charvat*. While acknowledging that Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," the Court emphasized that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. "Article III," the Court explained, "requires a concrete injury even in the context of a statutory violation." *Id*. A concrete injury must "actually exist," and it must be "real," not "abstract." *Id*. at 1548.

"[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. at 1549. The *Spokeo* Court identified two examples in which plaintiffs were unable to obtain information that Congress had decided to make public as statutory violations that also established injury in fact. *Id*. at 1549-50. But a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549. The Court envisioned scenarios in which a statutory violation would not amount to concrete injury, because there was no real harm or material risk of harm. In the context of the Fair Credit Reporting Act, the Court observed that certain procedural violations—such as a credit agency's failure to provide a required notice to a user when the agency's report was nonetheless entirely accurate, and the dissemination of a credit report with minor inaccuracies (such as an incorrect zip code)—likely could not, by themselves, establish standing because the violations result in no concrete harm. *Id*. at 1550.

With the benefit of *Spokeo*'s guidance, we conclude that Braitberg has not alleged an injury in fact as required by Article III. His complaint asserts "a bare procedural violation, divorced from any concrete harm." *Id.* at 1549. Braitberg alleges only that Charter violated a duty to destroy personally identifiable information by retaining certain information longer than the company should have kept it. He does not allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any way during the disputed period. He identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient. Although there is a common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts. *See* Restatement (Second) of Torts § 652A (Am. Law Inst. 1977); *see also Spokeo*, 136 S. Ct. at 1549. Modern courts have expressed a similar view. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) ("If, though not timely destroyed, [the personally identifiable information]

remained secreted in the video service provider's files until it was destroyed, there would be no injury."); *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078-pp, 2016 WL 3390415, at \*5 (E.D. Wis. June 17, 2016) (dismissing complaint for lack of concrete injury where plaintiff alleged only that cable operator retained personally identifiable information).

Nor are we convinced that Braitberg has alleged an economic injury arising from an alleged diminution of the value of the cable services that he purchased from Charter. Braitberg alleges that consumers place a value on protecting their personal data against improper access and unauthorized secondary use. Therefore, he contends, Charter's retention of personal information deprives him of "the full monetary value" of his transaction with the company. But without a plausible allegation that Charter's mere retention of the information caused any concrete and particularized harm to the value of that information, Braitberg has not adequately alleged that there was any effect on the value of the services that he purchased from Charter.

For these reasons, we conclude that Braitberg lacks Article III standing, and the case was properly dismissed. The judgment of the district court is affirmed.

_____