**Joshua COROZZO and Arthor Ruff, Appellants,**

v.

**WAL-MART STORES, INC., Respondent.**

**WD 80121**

Missouri Court of Appeals, Western District.

OPINION FILED: July 25, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Application for Transfer Denied November 21, 2017

Jonathan Sternberg and Ashlyn Buck Lewis, Kansas City, MO, and C. Jason Brown and Jayson A. Watkins, Gower, MO, Attorneys for Appellants.

Matthew D. Turner, J. Kent Lowry, and Alex C. Barrett, Jefferson City, MO, Attorneys for Respondent.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Victor C. Howard and James Edward Welsh, Judges

Mark D. Pfeiffer, Chief Judge

Mr. Joshua Corozzo ("Corozzo") and Mr. Arthor Ruff ("Ruff") brought a class action against Wal-Mart Stores, Inc. ("Wal-Mart") for violations of the Fair Credit Reporting Act ("FCRA"). The Circuit Court of Cole County, Missouri ("trial court"), granted Wal-Mart's motion to dismiss and entered judgment dismissing the matter with prejudice. Corozzo and Ruff appeal, raising two points of error. We affirm.

### Facts and Procedural History [1]

■ Corozzo applied for work with Wal-Mart in 2014, and Ruff applied for work with Wal-Mart in 2015. Both were given a form titled "Background Check Disclosure and Authorization Form Fair Credit Reporting Act Authorization" ("Disclosure Form"). The seven-page Disclosure Form [2] was used by Wal-Mart to obtain consumer reports [3] on individuals, including Corozzo and Ruff, for employment purposes.

On July 21, 2015, Corozzo and Ruff filed a class action "Complaint" against Wal-Mart, alleging willful violations of the FCRA. Specifically they alleged that Wal-Mart's Disclosure Form contained extraneous information, inaccurate and misleading statements, and did not provide the puta-tive class members with "a clear and conspicuous disclosure in writing in a document that consisted solely of the disclosure that a consumer report may be obtained for employment purposes." As relief, they sought "statutory damages, punitive damages, costs and attorneys fees, and all other relief available pursuant to the FCRA."

The circuit court docket sheet shows **"Judge Assigned"** the same day the case was filed. The docket sheet also shows an **"Order"** entered by Judge Jon Beetem on September 1, 2015, which order included a statement that Division 1 recused on its own motion and transferred the case file to the Presiding Judge for re-assignment. On October 2, 2015, the docket sheet shows the Presiding Judge entered an **"Order for Change of Judge"** assigning the case to Division 2.

Wal-Mart filed its answer on October 19, 2015, alleging as one of its affirmative defenses that "Plaintiffs lack standing to bring the claims set forth in their Complaint because they involve no threatened or actual injury to Plaintiffs. Plaintiffs lack standing to assert the claims in their Complaint because, among other reasons, they have not suffered an injury-in-fact."

A docket sheet entry on October 20, 2015 shows **"Judge Assigned[,] Motion to Stay[,]"** and indicates that Wal-Mart's motion to stay discovery and suggestions in

---

1.  In reviewing a trial court's dismissal of a cause of action for lack of standing, we assume all of the facts alleged in the plaintiffs' petition are true, and we grant the plaintiffs all reasonable inferences drawn from those facts. *Cmty. Care Ctr. of Lemay v. Mo. Health Facilities Review Comm.*, 92 S.W.3d 232, 234 (Mo. App. W.D. 2002).

2.  The Disclosure Form is not included in the Legal File.

3.  Under the Fair Credit Reporting Act, the term "consumer report" means:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … employment purposes[.] 15 U.S.C. § 1681a(d)(1)(B).

support were sent to the assigned judge for review.

On November 10, 2015, Corozzo and Ruff filed a motion for change of judge. The trial court conducted a hearing on the motion on November 18, 2015. After hearing the parties' arguments, the trial court denied the motion for change of judge[4] and permitted the parties to argue Wal-Mart's motion to stay discovery, which the trial court sustained in part.

Thereafter, Wal-Mart moved to dismiss Corozzo and Ruff's petition for lack of standing on the grounds that they asserted only a "bare procedural violation"; they did not assert any "concrete harm" or injury; and therefore they failed to satisfy the "injury-in-fact requirement of standing." After a hearing on the motion, the trial court entered its judgment dismissing the case with prejudice.

Corozzo and Ruff timely appealed.

### Point I—Change of Judge

#### Standard of Review

In Corozzo and Ruff's first point, they contend the trial court erred in denying their motion for change of judge because their request was timely made. The denial of a motion for change of judge without cause is an issue of law that the appellate court reviews de novo. *Gordon ex rel. G.J.E. v. Epperly*, 504 S.W.3d 836, 844 (Mo. App. W.D. 2016).

#### Analysis

Under Rule 51.05(a), a party has the absolute right to disqualify a judge once without cause or any showing of prejudice. *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. banc 2010). "A change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by a party.... The application need not allege or prove any cause for such change of judge and need not be verified." Rule 51.05(a). "Although a party's right to disqualify a judge for cause is a substantive right, the right to pursue a change of judge without cause is a procedural right." *Atteberry v. Hannibal Reg'l Hosp.*, 926 S.W.2d 58, 60 (Mo. App. E.D. 1996). "Because the nature of the application for change of judge without cause is procedural, the requesting party must strictly comply with the procedures set forth in Rule 51.05." *Id.*

One procedural limitation on obtaining a change of judge under Rule 51.05 is that the application must be timely filed. *Manion*, 305 S.W.3d at 464. To be timely, "[t]he application must be filed within 60 days from service of process or 30 days from the designation of the trial judge, whichever time is longer."[5] Rule 51.05(b). The "designation of the trial judge" occurs when the judicial transfer order is "filed" in the circuit court, *Cover v. Robinson*, 224 S.W.3d 36, 39 (Mo. App. W.D. 2007), not when the parties are notified of a change

4. After argument on the motion for change of judge, Judge Green indicated that he was inclined to take the motion under advisement and not take up Wal-Mart's motion for stay of discovery until the motion for change of judge was ruled. In response, counsel for Corozzo and Ruff stated to the trial court; "Your Honor, if the [motion for change of judge] is going to be taken under advisement, plaintiff would rather go ahead and argue the motion *to stay in front of you.*" In response, the trial court stated, "Okay. Well, I wrote motion for change of judge denied then." Then, the trial court proceeded to take argument on Wal-Mart's motion to stay discovery. Under these circumstances, Corozzo and Ruff have arguably waived any claim of error to the trial court's ruling on their motion for change of judge. At minimum, their appeal of this issue is disingenuous.

5. In this case, the longer period of time is thirty days from the designation of the trial judge in October 2015 since process was served on Wal-Mart on August 19, 2015.

in judge, *State ex rel. Nixon v. Farmer*, 268 S.W.3d 402, 404-05 (Mo. App. W.D. 2008)..

Here, a judge was assigned when the case was filed in the circuit court on July 21, 2015. On September 1, 2015, the original judge assigned to this case, Judge Beetem, recused himself *sua sponte*: "Division 1 recuses on it's [sic] own motion." Pursuant to Rule 51.07, if a judge in a civil action is recused for any reason, "the judge promptly shall transfer the case to the presiding judge of the circuit for reassignment in accordance with the procedures of Rule 51.05(e)." Judge Beetem's recusal order also directed: "File transferred to Presiding Judge for re-assignment."

Rule 51.05(e)(1) requires the presiding judge, if not disqualified in the case, to "assign a judge of the circuit who is not disqualified." On October 2, 2015, Presiding Judge Patricia Joyce issued an order: "Caseassigned [sic] to Division 2." The order was entered on the docket on October 2, 2015, as **"Order for Change of Judge,"** with the text below it stating "Case assigned to Division 2," followed by the Presiding Judge's initials "PSJ" and the initials of the Presiding Judge's secretary ("rlo") who docketed the order.

■ The judge of the division to which the case is assigned is considered the designated trial judge. *See State ex rel. Hagler v. Seay*, 907 S.W.2d 786, 787 (Mo. banc 1995) (holding thirty-day period for filing request for change of judge began to run when newly elected judge became judge of division to which case had been assigned). *See also State v. Ford*, 351 S.W.3d 236, 237, 238 n.4, 239 (Mo. App. E.D. 2011) (holding assignment of case to "Division 20" constituted a "designation of the trial judge" under Rule 32.07(b), which rule is "parallel and contain[s] nearly identical language" to Rule 51.05; and the trial judge did not abuse her discretion in denying untimely application for change of judge).

Accordingly, when Presiding Judge Joyce's transfer order assigning the case to Division 2 was filed on October 2, 2015, this constituted a "designation of the trial judge" for the purposes of Rule 51.05(b). *See Cover*, 224 S.W.3d at 39.

Corozzo and Ruff argue on appeal that the October 20, 2015 docket entry stating "Judge Assigned" was a new designation [6] of the trial judge triggering the thirty-day period under Rule 51.05. Corozzo and Ruff mischaracterize the October 20 docket en-

---

**6.** Corozzo and Ruff's reliance upon *State ex rel. Polaris Industries, Inc. v. Journey*, 505 S.W.3d 370 (Mo. App. W.D. 2016), to support their argument that the October 20, 2015 "Judge Assigned" docket entry was a new order designating the trial judge for purposes of Rule 51.05(b), is misplaced. In *Polaris*, after a wrongful death action had been pending in the circuit court for over five years, the judge entered an order placing the case on the inactive docket. *Id.* at 373. The order further stated that if the case was not removed from the inactive docket within sixty days, it would automatically be dismissed without prejudice and without further order. *Id.* No action was taken to remove the case from the inactive docket before the sixty-day deadline, which expired on January 2, 2012; and, although the original order indicated that no further order would ensue, the trial

court issued another docket entry on January 10, 2012, stating that the case was dismissed without prejudice. *Id.* The date of the entry of dismissal became relevant, and this court ultimately concluded that the January 10th docket entry was a modification of the January 2nd judgment. *Id.* at 376. We did not conclude that the January 10th docket entry was a "new" dismissal—only that the trial court possessed authority to modify its earlier judgment. *Id.* at 375-76. Here, the text of the October 20, 2015 docket entry of "Judge Assigned[,] Motion to Stay" was not a "new" designation of the trial judge or even a modification of the assignment of trial judge that had occurred by order on October 2, 2015; instead, the subsequent docket entry on the same date merely, in part, referred to the previously assigned "Division 2" by name (*i.e.*, Judge Daniel Green).

try. The full October 20 docket entry was **"Judge Assigned[,] Motion to Stay[,]"** with the text below it stating "Defendant's Motion to Stay and Suggestions in Support; Electronic Filing Certificate of Service. Sent to Judge for Review," followed by the initials ("msh") of the person who docketed the entry. The docket entry further indicated that the motion was filed by counsel on behalf of Wal-Mart. On the same date, an additional docket entry was made: **"Counsel Status Hearing Scheduled,"** with the text below it stating "Scheduled For: 11-Jan-2016; 1:30 PM; DANIEL RICHARD GREEN; **Setting:** 0; Cole Circuit." There is no indication that the October 20, 2015 docket entry was an order or that it was generated by the Presiding Judge; by its terms, it simply memorialized the defendant's motion for stay being sent to the assigned judge for review. The October 20, 2015 docket entry did not serve to designate the trial judge but, instead as evidenced by the subsequent docket entry on the same date, merely referenced the previously assigned "Division 2" by name (*i.e.,* Judge Daniel Richard Green).

The record clearly reflects that on October 2, 2015, Presiding Judge Joyce issued a written order assigning the case to Division 2, which order was entered in the docket on that date. This constituted the relevant "designation of the trial judge" for the purposes of Rule 51.05(b). Pursuant to Rule 51.05, Corozzo and Ruff's motion for change of judge was due within thirty days of that designation. Because they did not file their motion until November 10, 2015, it was untimely, and they were not entitled to relief.

Point I is denied.

### Point II—Standing

#### *Standard of Review*

In Corozzo and Ruff's second point, they assert that the trial court erred in dismissing their lawsuit based on lack of standing. "Our review of a dismissal ... for lack of standing is *de novo.*" *McGaw v. McGaw*, 468 S.W.3d 435, 438 (Mo. App. W.D. 2015) (internal quotation omitted). "[T]his court determines standing as a matter of law on the basis of the petition, along with any other noncontested facts accepted as true by the parties at the time the motion to dismiss was argued, and resolves the issue as a matter of law on the basis of the undisputed facts." *Id.* (internal quotation omitted).

We examine the pleadings to determine whether they invoke principles of substantive law. *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. W.D. 2012). We construe the pleadings liberally and accept all alleged facts as true and construe them in a light most favorable to the pleader. *Id.* "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.* (internal quotation omitted). However, as the parties seeking relief, Corozzo and Ruff bore the burden of establishing that they had standing. *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011).

"[T]his court must affirm the dismissal if it can be sustained on any ground which is supported by the motion to dismiss, regardless of whether the circuit court relied on that ground." *Kinder v. Holden*, 92 S.W.3d 793, 805 (Mo. App. W.D. 2002) (internal quotation omitted).

#### *Analysis*

The FCRA establishes conditions for furnishing and using consumer reports for employment purposes. 15 U.S.C. § 1681b(b). A consumer report may not be procured by an employer in connection with an application for employment unless:

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). Any employer who willfully fails to comply with the FCRA is liable to the consumer for, among other things, either actual damages or statutory damages of not less than $100 and not more than $1,000 per violation, costs and reasonable attorney's fees, and possibly punitive damages. 15 U.S.C. § 1681n(a). Corozzo and Ruff alleged that Wal-Mart violated the FCRA by knowingly using a seven-page Disclosure Form that consisted of more than just an FCRA disclosure and authorization to procure a consumer report for employment purposes and that contained extraneous information and inaccurate and misleading statements.

▪▪▪ Before addressing the merits of a case, the circuit court must determine whether there is a justiciable controversy. "Justiciability is a 'prudential' rather than a jurisdictional doctrine." *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013). "A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Id.* (internal quotation omitted). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.* at 774.

Wal-Mart alleged in its motion to dismiss that Corozzo and Ruff asserted no injury with regard to the FCRA notice form they received; and because they asserted only "a bare procedural violation [of the FCRA], divorced from any concrete harm," they did not satisfy the injury-in-fact requirement of standing under *Spokeo v. Robins*, ⸺ U.S. ⸺, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). In *Spokeo*, the Supreme Court addressed "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Question Presented, *Spokeo v. Robins*, No. 13-1339 (U.S.), *available at* https://www.supremecourt.gov/qp/13-01339 qp.pdf. Plaintiff Robins alleged that Spokeo, a consumer reporting agency, violated the FCRA by gathering and disseminating incorrect information about him. *Spokeo*, 136 S.Ct. at 1546. The district court dismissed Robins's complaint with prejudice, finding that Robins lacked standing because he had not properly pleaded an injury-in-fact as required by Article III. *Id.* The Ninth Circuit reversed, concluding that Robins's alleged violations of his statutory rights were sufficient to satisfy the injury-in-fact requirement of Article III. *Id.* The Supreme Court concluded that the Ninth Circuit's standing analysis was incomplete because it did not address whether the particular procedural violations alleged met the concreteness requirement. *Id.* at 1550.

Corozzo and Ruff argue that "*Spokeo* has nothing to do with this case. It concerned U.S. Const. Art. III 'case or controversy' standing for the limited jurisdiction of federal courts, which has no application to Missouri's broad standing requirements for our general-jurisdiction circuit courts under Mo. Const. art. V, § 14." Corozzo and Ruff overlook that "[t]he requirement that a party have standing to bring an action is a component of the general re-

quirement of justiciability" in both the federal context and in Missouri. *Harrison v. Monroe Cty.*, 716 S.W.2d 263, 265 (Mo. banc 1986). "In the federal context, this requirement of justiciability arises from the language of Article III, § 2[, clause 1] of the United States Constitution, which extends judicial power of the federal courts to 'all cases' [federal question jurisdiction] [and] 'to controversies' [diversity jurisdiction]." *Id.* at 265-66. "The Missouri analogue to this provision is found in Mo. Const. art. V, § 14(a), which states that '[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.'" *Id.* at 266.

"As an aspect of justiciability, the standing question [in the federal context] is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). "This 'personal stake,' in turn, generally depends upon whether the plaintiff can allege 'some threatened or actual injury resulting from the putatively illegal action.'" *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)). "The same requirement of justiciability exists under Missouri law." *Id.* "[S]tanding is a component of the general requirement of justiciability and is the state analogue to the federal 'case or controversy' requirement." *Schweich*, 408 S.W.3d at 774 (internal quotation omitted). "Prudential principles of justiciability ... require that a party have standing to bring an action. Standing requires that a party have a personal stake arising from a threatened or actual injury." *Id.* (internal quotation omitted).

In *Spokeo*, the Supreme Court directly addressed standing requirements in the

context of a claimed violation of the FCRA in the absence of actual injury. In reaching its decision, the Supreme Court focused on the constitutional requirement of an injury in fact for Article III standing and reiterated that "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1547-48 (internal quotation omitted). The Court discussed the concreteness requirement: "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 1548. The Court acknowledged that "intangible injuries can nevertheless be concrete." *Id.* at 1549. While the Court recognized that Congress has the power to identify and elevate intangible harms to the status of legally cognizable injuries:

> [that] does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. ***Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirements of Article III.***

*Id.* (emphasis added).

Similarly, "[a]lthough this Court is not bound by precedent from the Eighth Circuit, we may consider it as persuasive authority, particularly where the law at issue is a federal statute that provides concurrent jurisdiction in both state and federal courts." *Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 871 (Mo. App. E.D. 2017). Relevant to our *de novo* review, "[a]lthough we are not bound to follow Eighth Circuit precedent, we look respectfully to such opinions for such aid and

guidance as may be found therein." *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 102 (Mo. App. W.D. 2015) (citation omitted) (internal quotation omitted). "That is particularly so where, as here, [Corozzo and Ruff's] case could either have been brought in the federal courts or in state court." *Id.* "This militates in favor of consistency in the legal standards to be applied by our state courts and the Eighth Circuit if at all possible." *Id.*

In *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016), Alex Braitberg brought a putative class action against his former cable television provider, Charter Communications, Inc., alleging that Charter retained his personally identifiable information in violation of the Cable Communications Policy Act. *Id.* at 926. Charter moved to dismiss for lack of Article III standing under the Cable Act and failure to state a claim because Braitberg did not allege damages. *Id.* at 926-27. Braitberg contended that a violation of a statutory right constitutes an injury in fact that is sufficient by itself to establish standing under Article III and that there was no separate requirement that he allege any "actual injury" arising from Charter's retention of his personal information. *Id.* at 929-30.

In its analysis, the *Braitberg* court observed that its decisions in *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014), and *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013), seemed to accept the view that the actual-injury requirement may be satisfied solely by the invasion of a legal right that Congress created. The court acknowledged that "[i]n *Spokeo*, however, the Supreme Court rejected this absolute view and superseded our precedent in *Hammer* and *Charvat*." *Id.* at 930. The *Braitberg* court recognized that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute

grants a person a statutory right and purports to authorize that person to sue to vindicate that right; and that Article III requires a concrete injury even in the context of a statutory violation. *Id.* (citing *Spokeo*, 136 S.Ct. at 1548-49). The court then noted:

> Braitberg alleges only that Charter violated a duty to destroy personally identifiable information by retaining certain information longer than the company should have kept it. He does not allege that Charter has disclosed the information to a third party, that any outside party has accessed the data, or that Charter has used the information in any way during the disputed period. He identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient.

*Id.* Pursuant to *Spokeo*'s precedent, the court concluded that Braitberg lacked Article III standing because he did not allege an injury in fact, and his complaint was properly dismissed because it asserted " 'a bare procedural violation, divorced from any concrete harm.' " *Id.* (quoting *Spokeo*, 136 S.Ct. at 1549). We find the Eighth Circuit's analysis in *Braitberg* to be persuasive, particularly where we are dealing with a federal statutory remedy in the present case that "could either have been brought in the federal courts or in state court" and hence "militates in favor of consistency in the legal standards to be applied by our state courts and the Eighth Circuit if at all possible." *Host*, 460 S.W.3d at 102.

Pursuant to the precedent of *Spokeo* and the reasoned analysis by the Eighth Circuit Court of Appeals in *Braitberg*, we conclude that Corozzo and Ruff have not pleaded an actual injury as contemplated by Missouri's pleading requirements related to the concepts of justiciability and standing. All they allege is that the format of Wal-Mart's Disclosure Form did not comply with the FCRA's disclosure re-

quirement because Wal-Mart's Disclosure Form included extraneous information. They did not claim that they did not receive a disclosure or that they did not authorize Wal-Mart to obtain their consumer reports. They did not allege that they did not see the disclosure or that the language of the disclosure was confusing or incomprehensible to them. Nor did they allege that their authorizations were not knowingly given to Wal-Mart due to an alleged FCRA violation. Like the plaintiff in Spokeo, Corozzo and Ruff simply cannot satisfy Missouri's standing requirements by alleging "a bare procedural violation, divorced from any concrete harm." Spokeo, 136 S.Ct. at 1549.

Point II is denied.

### Conclusion

The trial court's judgment is affirmed.

Victor C. Howard and James Edward Welsh, Judges, concur.