PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____


No. 17-1889

_____


FRANK LONG; JOSEPH SHIPLEY;
MICHAEL WHITE,
Individually and on Behalf of All Others Similarly Situated,
Appellants


v.


SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E. D. Pa. No. 2-16-cv-01991)
District Judge:  Honorable Petrese B. Tucker

_____

Argued December 12, 2017

Before: CHAGARES, RESTREPO and FISHER, *Circuit Judges*.


(Filed: September 10, 2018)

Cheryl-Lyn D. Bentley
Adam T. Klein
Christopher M. McNerney
Ossai Miazad
Lewis M. Steel
Outten & Golden
685 Third Avenue, 25th Floor
New York, NY 10017

Benjamin D. Geffen
Public Interest Law Center of Philadelphia
1709 Benjamin Franklin Parkway
United Way Building, 2nd Floor
Philadelphia, PA 19103

Jon M. Greenbaum
Dariely Rodriguez
Lawyers' Committee for Civil Rights Under Law
1500 K Street, Suite 900
Washington, DC 20005

Deepak Gupta    [ARGUED]
Gupta Wessler
1900 L Street, .N.W., Suite 312
Washington, DC 20036

Ryan A. Hancock
Willig Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

     *Counsel for Appellants*


Jamie M. Gullen
Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19102

     *Counsel for Amicus Appellants Community Legal
Services, National Employments Law Project and Service
Employees International Union Local 668*


James A. Francis
Francis & Mailman
100 South Broad Street
Land Title Building, 19th Floor
Philadelphia, PA 19110

     *Counsel for Amicus Appellant National Consumer Law
Center*


Michael A. Cognetti
Candidus K. Dougherty
Jeffrey B. McCarron
Swartz Campbell
50 South 16th Street
Two Liberty Place, 28th Floor
Philadelphia, PA 19102

Elizabeth A. Malloy   [ARGUED]
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103
    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

This case raises again the frequently-litigated question of whether violation of a statute—here, the Fair Credit Reporting Act—is an injury in fact that satisfies the Constitution's "case or controversy" requirement. The District Court concluded that the plaintiffs did not allege a concrete injury in fact and therefore dismissed their complaint for lack of jurisdiction. We affirm in part and reverse in part.

I.    Background

The complaint alleges the following facts. The three named plaintiffs were convicted of drug offenses in the relatively distant past: Michael White in 2006 and 2007, Joseph Shipley in 2001, and Frank Long in 1997. More recently, Plaintiffs applied to Southeastern Pennsylvania Transportation Authority (SEPTA) for jobs that involved operating vehicles. Each Plaintiff filled out a form disclosing

his criminal history and authorizing SEPTA to obtain a background check. Initially, Plaintiffs' job applications seemed to meet with success: each received an offer or was given information about when to start training.

Ultimately, though, SEPTA denied employment to Plaintiffs. SEPTA told Long he was not hired because of "the information SEPTA had received from [the] background check." App. 28 (Complaint ¶ 47). SEPTA told White and Shipley they were not hired because of their "criminal history." App. 29, 31 (Complaint ¶¶ 57, 69). When Shipley requested more information, SEPTA sent a letter saying that for positions that "require the operation of . . . vehicles," SEPTA has a "categorical lifetime ban" on hiring anyone convicted of a crime "involving the possession, sale, distribution, manufacture and use of controlled substances." App. 29-30 (Complaint ¶ 58).

SEPTA did not send Plaintiffs copies of their background checks before it decided not to hire them. Nor did it send them notices of their rights under the Fair Credit Reporting Act (FCRA). The FCRA, however, required SEPTA to send both before it denied them employment. 15 U.S.C. § 1681b(b)(3). Plaintiffs filed a putative class action complaint based on these two FCRA violations, as well as other claims not at issue here.

SEPTA moved to dismiss the complaint. The District Court granted the motion and dismissed for lack of standing. It concluded there was only a "bare procedural violation," not a concrete injury in fact, because Plaintiffs alleged that SEPTA denied them jobs "based on their criminal history, which Plaintiffs disclosed prior to SEPTA procuring their background checks." *Long v. Se. Pa. Transp. Auth.*, No. CV 16-1991, 2017 WL 1332716, at *4 (E.D. Pa. Apr. 5, 2017). "Additionally,"

5

the court noted, "Plaintiffs do not allege that their reports were inaccurate in any way." *Id.* The court concluded that "SEPTA's purported FCRA violations did not cause the type of harm to Plaintiffs, or present any material risk of harm, that would give rise to a de facto injury." *Id.* The court did not reach SEPTA's argument that Plaintiffs failed to state a claim under Rule 12(b)(6).

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. This Court has jurisdiction to review the District Court's final order under 28 U.S.C. § 1291. We exercise plenary review over a district court's dismissal of a complaint under Rule 12(b)(1) for lack of standing. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

## III. Analysis

Plaintiffs allege that SEPTA violated the FCRA by taking adverse employment action without providing copies of their background checks or notices of their rights under the FCRA. SEPTA argues that Plaintiffs lack standing because they were not harmed by what the District Court ruled were "bare procedural violations" of the statute. To determine whether the violations were "bare" and "procedural," or whether they were concrete injuries in fact, we will first examine the statute to ascertain what rights it confers. Next, we will examine the factual allegations in the complaint. Finally, with the FCRA and the facts in hand, we will analyze whether Plaintiffs have standing.

## A. The Statute

The FCRA provides that "before" a potential employer, like SEPTA, takes "any adverse action based in whole or in

6

part" on a consumer report, it "shall provide" the person who is the subject of the report with "(i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]." 15 U.S.C. § 1681b(b)(3)(A). An adverse action includes "a denial of employment." *Id.* § 1681a(k)(1)(B). Criminal background checks are "consumer reports," i.e., "written . . . communication" that bears on "a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" and "is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ." *Id.* § 1681a(d)(1).[1]

Plaintiffs argue that the statute prohibits adverse employment actions based on consumer reports that an individual has not had the opportunity to review or discuss with the potential employer. SEPTA, on the other hand, argues that the statute protects only against adverse employment action that is based on inaccurate or misleading information. SEPTA's position is that Plaintiffs' consumer reports were accurate and therefore they suffered no injury in fact. SEPTA is incorrect, however. As we now explain, the statute confers a broader right than simply to be free from adverse action based on inaccurate information.

Following the Supreme Court's directives, we "look to the text of the statute, rather than the legislative history, to interpret a statute or determine legislative intent as an aid to interpretation." *Thorpe v. Borough of Thorpe*, 770 F.3d 255,

---

[1] SEPTA has not disputed that the background checks at issue here are consumer reports.

263 (3d Cir. 2014).[2] The text of § 1681b(b)(3) requires not just that the employer "shall provide" the consumer report and FCRA rights disclosure, but that it must do so "before taking any adverse action." 15 U.S.C. § 1681b(b)(3)(A). The statute should be construed so that words and phrases are not "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The phrase "before taking any adverse action" should, therefore, have some purpose, and this purpose is illuminated by the congressional findings incorporated into the statute's text. 15 U.S.C. § 1681.

Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating . . . information on consumers." *Id.* § 1681(a)(3). Therefore, "[t]here is a need to ensure that [they] exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.* § 1681(a)(4); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016), as revised (May 24, 2016) ("The FCRA seeks to ensure 'fair and accurate credit reporting.'" (quoting 15 U.S.C. § 1681(a)(1))). "To achieve this end, the Act regulates the creation and the use of

---

[2] Given our focus on the statutory text, we do not find persuasive Plaintiffs' citation of *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016), which relies heavily on the FCRA's legislative history. In "rare cases," reliance on legislative history is warranted because "'the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Thorpe*, 770 F.3d at 263 (quoting *First Merchs. Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 402 (3d Cir. 1999)). Plaintiffs do not argue, nor do we perceive, that this is such a case.

consumer reports . . . for certain specified purposes, including . . . employment." *Spokeo*, 136 S. Ct. at 1545 (internal quotation marks and footnote omitted). "'These consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

The required pre-adverse-action copy of an individual's consumer report allows him to ensure that the report is true, and may also enable him to advocate for it to be used fairly— such as by explaining why true but negative information is irrelevant to his fitness for the job. The required pre-adverse-action notice of FCRA rights provides the individual with information about what the law requires with regard to consumer reports. The advance notice requirement, then, supports both accuracy and fairness. It helps ensure that reports are properly used and relevant for the purposes for which they are used.

SEPTA argues that § 1681b(b)(3) protects only against adverse action based on inaccurate information, but the subsection is not so narrow. *See* 15 U.S.C. § 1681b. The right to pre-adverse-action disclosures serves all of the purposes discussed above: accuracy, relevancy, proper utilization, and fairness. The individual's right to dispute and correct consumer reports is provided elsewhere, *see* 15 U.S.C. § 1681i, so according to the statute's structure, § 1681b is not limited to situations where the report is inaccurate. In addition, it would not make sense for § 1681b(b)(3) to apply only to inaccurate information, because the consumer cannot know whether his report is accurate unless it is disclosed to him. Finally, if Congress meant to provide protections only against the use of inaccurate consumer reports, it could have written the statute

9

to say so. The meaning of § 1681b(b)(3) is plain: before an employer takes adverse action based in any part on a consumer report, the consumer has a right to receive a description of his rights under the FCRA, as well as a copy of his report, regardless of its accuracy.[3]

SEPTA also argues that Congress did not intend § 1681b(b)(3) to protect against non-disclosure where the adverse action would have been taken regardless of any opportunity to comment. SEPTA asserts that Plaintiffs' criminal histories categorically disqualified them for the driver positions they sought, so the opportunity to respond would have made no difference. However, the FCRA does not condition the right to receive a consumer report on whether having the report would allow an individual to stave off an adverse employment action. Rather, the statute applies to all consumers.[4]

In sum, § 1681b(b)(3) confers on the individual a right to receive, before adverse action is taken, a copy of his or her consumer report (regardless of its accuracy) and a notice of his or her rights. This right permits individuals to know

---

[3] The Seventh Circuit very recently considered this question and arrived at the same conclusion. *Robertson v. Allied Solutions, LLC*, --- F.3d ---, 2018 WL 4113815, at *4 (7th Cir. 2018) ("[A]n employer's disclosure obligations under [15 U.S.C. § 1681b(b)(3)(A)] exist to serve interests beyond the problem of inaccurate reports.").

[4] *See Robertson*, 2018 WL 4113815, at *5 (where a prospective employer revoked a job offer based on a background check without providing the plaintiff a copy of the background check, the fact that the plaintiff may not have been able to convince the prospective employer to honor its offer was "immaterial" to the standing analysis).

beforehand when their consumer reports might be used against them, and creates the possibility for the consumer to respond to inaccurate or negative information—either in the current job application process, or going forward in other job applications.

## B. The Complaint

A district court entertaining a Rule 12(b)(1) motion to dismiss for lack of standing must first ascertain whether it "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Schering Plough*, 678 F.3d at 243). "A facial attack . . . considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ." *Id.* at 358. A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff. *Id.* A factual attack, in which the defendant contests the truth of the jurisdictional allegations, is a different matter: the court need not treat the allegations as true, and a plenary trial is held to resolve any material factual disputes. *Id.*; *Schuchardt v. President of the U.S.*, 839 F.3d 336, 343 (3d Cir. 2016).

In passing, SEPTA invokes the standard for a factual attack, declaring without elaboration that Plaintiffs' allegations are not entitled to the usual presumption of truth. Appellee's Br. 9. However, SEPTA never made a factual attack. It "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts," so its motion is, "by definition, a facial attack." *Constitution Party*, 757 F.3d at 358; *see also Long*, 2017 WL 1332716, at *3 ("SEPTA . . . does not challenge the factual assertions in the Complaint."). Therefore, we apply the familiar standard and assume the truth of Plaintiffs' allegations. *Schuchardt*, 839 F.3d at 343.

11

Although the District Court articulated the correct standard, it did not actually "accept as true all of [Plaintiffs'] plausible allegations, and draw all reasonable inferences in [their] favor." *Id.* For example, the court stated that Plaintiffs alleged that SEPTA denied them jobs because of what they disclosed about their own criminal histories. 2017 WL 1332716, at *4. However, Plaintiffs clearly allege that SEPTA denied them jobs because of their background checks. App. 28 (Complaint ¶ 47, alleging that Long received a letter from SEPTA indicating that he was not hired because of "information SEPTA had received from [the] background check"); App. 29 (Complaint ¶ 56, alleging that Shipley was told "not to report to work, and that his background check had not been cleared"); App. 31 (Complaint ¶ 68, alleging that SEPTA did not begin training White because it was "waiting on the results of his background check").

The District Court also failed to construe Plaintiffs' allegations in the light most favorable to them. It adopted the view (espoused by SEPTA) that their drug convictions categorically barred them from the jobs for which they applied. Plaintiffs allege, however, that SEPTA might have changed its decision if they had the chance to respond to their background checks. The District Court was required to assume the truth of this allegation.

## C. Standing

The law on standing is well developed, and several recent cases analyze standing in the context of alleged violations of federal privacy statutes. We begin by surveying Supreme Court and Third Circuit precedent to establish the relevant standing principles. We then apply the law to the facts of this case and conclude that the District Court erred, in part, in dismissing the complaint for lack of standing.

## 1. *Spokeo*

Under Article III of the United States Constitution, the power of the judiciary "extends only to 'Cases' and 'Controversies.'" *Spokeo*, 136 S. Ct. at 1547. The standing doctrine defines what is a "case" or "controversy." *Id.* Article III standing requires (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that a favorable decision will provide redress for the injury. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). Injury in fact is "'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)). An injury is "concrete" if it is "real, or distinct and palpable, as opposed to merely abstract." *Id.* (quoting *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)).

In *Spokeo*, the plaintiff alleged violations of the FCRA provision that requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy." 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681e(b)). The plaintiff alleged that he was out of work and that inaccuracies in his consumer report represented "imminent and ongoing actual harm to his employment prospects," but he did not allege that any particular employer declined to hire him because of the inaccuracies. *Id.* at 1554 (Ginsburg, J., dissenting) (alterations omitted). The Court ruled that the injury was "particularized" because it "affect[ed] the plaintiff in a personal and individual way." *Id.* at 1548 (majority opinion) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). The Court emphasized, however, that particularity is not sufficient to show injury in fact; concreteness is also required. *Id.*

13

Therefore, it went on to explain what a concrete injury is and is not.

A concrete injury is "*de facto*;" it "actually exist[s]," though it need not be "tangible." *Id.* at 1548-49. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. The historical inquiry asks whether an intangible harm "has a close relationship" to one that historically has provided a basis for a lawsuit, and the congressional inquiry acknowledges that Congress's judgment is "instructive and important" because that body "is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.*

While Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" *id.* (quoting *Lujan*, 504 U.S. at 578), standing "requires a concrete injury even in the context of a statutory violation," *id.* Therefore, a "bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *Id.* The Court reaffirmed, however, that "the risk of real harm" can show concreteness. 136 S. Ct. at 1549. As examples, it cited common law causes of action for "harms [that] may be difficult to prove or measure," such as slander per se. *Id.* It also reaffirmed that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.*

Having laid out principles of concreteness, the Court remanded to the Ninth Circuit for it to consider whether the

14

plaintiff's particularized injury was also concrete, as required for standing. *Id.* at 1550.[5]

## 2. Third Circuit Precedent

When discussing standing, we have noted that "the injury-in-fact element is not Mount Everest. The contours of the . . . requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alterations omitted) (quoting *Blunt*, 767 F.3d at 278). Moreover, "[t]he Supreme Court has repeatedly affirmed the ability of Congress to 'cast the standing net broadly' and to grant individuals the ability to sue to enforce their statutory rights." *Id.* at 635 (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19 (1998)). It is perhaps unsurprising, then, that our four recent cases analyzing standing under privacy statutes "have been decidedly in favor of allowing individuals to sue to remedy violations of their statutory rights, even without additional injury." *Id.* at 636.

---

[5] On remand, the Ninth Circuit had "little difficulty" concluding that the plaintiff's injury was concrete. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114 (9th Cir. 2017). Given the "ubiquity and importance of consumer reports," a consumer's livelihood is threatened by an inaccurate report. *Id.* Additionally, the individual interests at issue "resemble other reputational and privacy interests that have long been protected in the law," namely, the interest in avoiding "intangible harms caused by . . . untruthful disclosures." *Id.* at 1114-15 (citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-41 (3d Cir. 2017)).

15

In the first case, which preceded *Spokeo*, the plaintiffs sued under the Wiretap Act, the Stored Communications Act, and the Computer Fraud and Abuse Act, alleging that Google put cookies on their web browsers despite its statements to the contrary. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 130, 133 (3d Cir. 2015). The defendants argued there was no economic loss and hence no injury in fact. *Id.* at 134. We ruled that injury in fact does not require any "particular type of harm," and "may exist solely by virtue of statutes creating legal rights." *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)). The plaintiffs' "specific" allegations of "concrete, particularized, and actual" injury were sufficient to confer standing. *Id.* at 134-35.

In the second case, which post-dated *Spokeo*, the plaintiffs sued under the Wiretap Act, the Stored Communications Act, and the Video Privacy Protection Act, alleging that the defendants unlawfully used cookies to track children's internet history. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 269-71 (3d Cir. 2016). This Court concluded that *Spokeo* did not "alter our prior analysis in *Google*" or "call[] into question whether the plaintiffs . . . have Article III standing." *Id.* at 273-74. Plaintiffs' harm was concrete because it "involve[d] a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information." *Id.* at 274.

The third appeal involved the theft of a computer containing the plaintiffs' personal health information. *Horizon*, 846 F.3d at 629. The plaintiffs sued under the FCRA, arguing that the unauthorized disclosure was, "in and of itself, an injury in fact," even absent any allegation that the information had been misused. *Id.* at 634. We noted that *Google* and *Nickelodeon*, which "provide welcome clarity" on standing,

16

are "decidedly in favor of allowing individuals to sue to remedy violations of their statutory rights, even without additional injury." *Id.* at 636. We also stated that *Spokeo* does not "redefin[e] the injury-in-fact requirement," but "[i]nstead . . . reemphasizes that Congress 'has the power to define injuries that were previously inadequate in law.'" *Id.* at 638 (citation omitted).

We applied *Spokeo*'s "two tests for whether an intangible injury can . . . be 'concrete.'" *Id.* at 637. We looked first to history—"whether 'an alleged intangible harm' is closely related 'to a harm that has traditionally been regarded as providing a basis for a lawsuit.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). We explained that the defendant's actions did not need to "give rise to a cause of action under common law;" it was enough that "the 'intangible harm' that FCRA seeks to remedy 'has a close relationship'" to the historical tort of invasion of privacy. *Id.* at 639-40 (quoting *Spokeo*, 136 S. Ct. at 1549). Applying *Spokeo*'s second test, the congressional test, we concluded that because the disclosure of the plaintiffs' private information was closely related to a historical tort, it was "within Congress's discretion to elevate . . . into a concrete injury." *Id.* at 640 n.23. Therefore, the plaintiffs had not "allege[d] a mere technical or procedural violation of FCRA," but "instead the unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent." *Id.* at 640 (footnote omitted). Accordingly, the plaintiffs had standing. *Id.* at 641.

In our fourth and final case, the plaintiff sued under the Telephone Consumer Protection Act (TCPA) after receiving a single unsolicited call on her cell phone. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017). We reemphasized that "[w]hen one sues under a statute alleging 'the very injury the statute is intended to prevent,' and the

17

injury 'has a close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Id.* at 351 (internal alterations omitted) (quoting *Horizon*, 846 F.3d at 639-40). The injury passed the congressional test because an unsolicited cell phone call was "the very harm that Congress sought to prevent," and it passed the historical test because the TCPA "protect[s] essentially the same interests" as the common law tort of intrusion upon seclusion. *Id.* Therefore, the plaintiff "alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo* and our decision in *Horizon*." *Id.* at 352.

### 3. Application

A plaintiff must "demonstrate standing for each claim he seeks to press." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Plaintiffs allege that SEPTA violated the FCRA by (i) taking adverse action without first providing copies of their consumer reports, and (ii) taking adverse action without first providing descriptions of their FCRA rights. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii). SEPTA

argues that Plaintiffs lack standing because these alleged harms are not injuries in fact.[6]

Plaintiffs have standing to assert their first claim—that SEPTA failed to provide copies of their consumer reports. Under *Spokeo*'s congressional test, the FCRA clearly expresses Congress's "intent to make [the] injury redressable." *Horizon*, 846 F.3d at 637. Congress granted the consumer a right to receive a copy of his report before adverse action is taken, and provided for statutory damages plus attorney's fees for willful noncompliance, which Plaintiffs allege here. 15 U.S.C. §§ 1681b(b)(3), 1681n; *Horizon*, 846 F.3d at 639 (Congress "allowed for statutory damages for willful violations—which clearly illustrates that Congress believed that the violation of FCRA causes a concrete harm to consumers."). This harm was within Congress's power to elevate to an injury in fact.[7] "Although it is possible to read . . .

---

[6] SEPTA also argues, as an alternative ground for affirmance, that Plaintiffs failed to allege the other two standing requirements: "a sufficient causal connection between the injury and the conduct complained of" and "a likelihood that the injury will be redressed by a favorable decision." *Finkelman*, 810 F.3d at 193 (quoting *Neale*, 794 F.3d at 358-59). However, Plaintiffs plausibly alleged that SEPTA denied them employment at least in part because of their consumer reports, App. 43, 44 (¶¶ 120,129), and any injury would be redressable through statutory damages.

[7] We caution that Congress cannot elevate any insubstantial injury into a concrete injury merely by the legislative act of providing a remedy. *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016) ("A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*.").

*Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' . . . , we do not believe that the Court so intended to change the traditional standard for the establishment of standing." *Horizon*, 846 F.3d at 637-38 (footnote omitted) (quoting *Spokeo*, 136 S. Ct. at 1550). Moreover, taking an adverse employment action without providing the required consumer report is "the very harm that Congress sought to prevent, arising from prototypical conduct proscribed" by the FCRA. *Susinno*, 862 F.3d at 352 (internal quotation marks omitted).

*Spokeo*'s second test, the historical test, assesses whether the injury in question has a close relationship to a harm traditionally recognized under common law. *Horizon*, 846 F.3d at 639. A perfect common-law analog is not required. *Id.* We ask whether the "newly established causes of action protect essentially the same interests" as "traditional causes of action." *Susinno*, 862 F.3d at 351.

Common-law privacy rights were historically understood as being invaded by "(a) unreasonable intrusion upon the seclusion of another, . . . (b) appropriation of the other's name or likeness, . . . (c) unreasonable publicity given to the other's private life, . . . or (d) publicity that unreasonably places the other in a false light before the public . . . ." Restatement (Second) of Torts § 652A(2)(a)-(d) (1977). These latter three types of privacy torts represent interference with an individual's ability to control his personal information. That is analogous to the injury here, which is the use of Plaintiffs' personal information—their consumer reports—without Plaintiffs being able to see or respond to it. Therefore, the second *Spokeo* test, the historical test, is also met. Because the statute meets both tests, and because Plaintiffs have alleged sufficient concrete harm, they have standing to bring their

claim that SEPTA did not provide them with the required copies of their consumer reports.[8]

SEPTA points to hypotheticals in *Spokeo* to argue that Plaintiffs' injury is bare and procedural, and thus not a concrete injury-in-fact. In *Spokeo*, the Court said that certain FCRA violations would "result in no harm," such as where a consumer report contains an immaterial inaccuracy like an incorrect zip code, or where the report is "entirely accurate" but its use is not disclosed. *Id.* at 1550. SEPTA contends that—as in the second hypo—Plaintiffs' consumer reports were accurate, even if they did not receive the required notice. SEPTA's argument, however, depends on its view that the sole purpose of the § 1681b(b)(3) disclosures is to allow the correction of inaccuracies. As we have explained, *supra* Part III.A, the right to the disclosures is the same whether the report is accurate or not. *Spokeo* naturally focused on accuracy; the plaintiff there had alleged that his consumer report was inaccurate and therefore violated a different provision of the FCRA, § 1681e(b). *Spokeo*'s focus on accuracy in connection with an alleged § 1681e(b) violation does not negate the language and purpose of § 1681b(b)(3), which is at issue here.

We turn next to SEPTA's alleged failure to notify Plaintiffs of their FCRA rights. Plaintiffs argue that this was a concrete harm because it "increased the risk that . . . individuals would not know of their FCRA rights and have their claims lapse before they could bring suit." Appellants' Br. 29. Under the principles outlined above, this is a "bare

---

[8] The Seventh Circuit concluded, as do we, that a plaintiff has standing to sue based on allegations that she did not receive the pre-adverse action notice required by § 1681b(b)(3). *Robertson*, 2018 WL 4113815, at *5.

21

procedural violation, divorced from any concrete harm," that cannot "satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. Plaintiffs became aware of their FCRA rights and were able to file this lawsuit within the prescribed limitations period, so they were not injured.[9]

Other federal appeals courts have deployed reasoning similar to ours, and have arrived at results consistent with this one—albeit in decisions regarding a different FCRA requirement. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (cited with approval in *Robertson*, 2018 WL 4113815); *Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017). In both *Groshek* and *Syed*, the defendants disclosed that they would be obtaining consumer reports, but the disclosures were not in the format the FCRA requires. Groshek lacked standing because he did not allege that he failed to understand the disclosure. *Groshek*, 865 F.3d at 887. Syed had standing because he alleged he failed to understand the disclosure, and that if he had understood it, he would not have signed a liability waiver. *Syed*, 853 F.3d at 499-500. Plaintiffs are similar to Groshek, and like him, they lack standing, because although they did not receive FCRA rights disclosures, they understood their rights sufficiently to be able to bring this lawsuit.

Plaintiffs also argue that the lack of an FCRA notice "increased the risk of harm to . . . the putative class." Appellants' Br. 29 (internal quotation marks omitted).

---

[9] A consumer may bring an action under the FCRA "not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Plaintiffs thus imply that unnamed class members remained unaware of their FCRA rights. However, "[n]amed plaintiffs who represent a class must allege . . . that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . ." *Horizon*, 846 F.3d at 634 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Therefore, any harm to unnamed class members cannot constitute injury in fact.

## IV.  Conclusion

For these reasons, we affirm the dismissal of Plaintiffs' claim based on SEPTA's failure to provide them with notice of their FCRA rights as required by 15 U.S.C. § 1681b(b)(3)(A)(ii). We reverse the dismissal of Plaintiffs' claim based on SEPTA's failure to provide them with copies of their consumer reports as required by 15 U.S.C. § 1681b(b)(3)(A)(i), and we remand for further proceedings.