

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| REBECCA COURTRIGHT, ET AL., | ) |
| | ) WD82684 |
| Appellants, | ) |
| v. | ) OPINION FILED: |
| | ) |
| O'REILLY AUTOMOTIVE, | ) March 17, 2020 |
| | ) |
| Respondent. | ) |
| | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable John M. Torrence, Judge**

**Before Division Two:**
**Cynthia L. Martin, P.J., Thomas H. Newton, and Gary D. Witt, JJ.**

Prospective employees, Ms. Rebecca Courtright; Mr. Anthony Bradley; Mr. Raphael Saye; and Mr. Juan Estrada, Appellants, appeal a Jackson county circuit court judgment granting a motion to dismiss in an action brought against O'Reilly Automotive Stores, Inc.; CSK Auto, Inc.; and O'Reilly Auto Enterprises, LLC (collectively, O'Reilly), Respondents, alleging violations of the Fair Credit Reporting Act (FCRA) arising from their revocation of conditional job offers due to consumer reports before disclosing the reports. We reverse in part and affirm in part.

Ms. Courtright applied to work at an O'Reilly Auto Parts store in January 2014. Ms. Courtright was given disclosure and authorization forms and authorized O'Reilly to procure her background report. She was extended an employment offer conditioned on satisfactorily completing a criminal-background check. Ms. Courtright though, had two felony identity-theft

convictions that appeared on her background report. Ms. Courtright did not challenge the background report's contents or the two felony convictions. Due to Ms. Courtright's felony convictions, O'Reilly revoked the conditional employment offer. Ms. Courtright testified that the harm she suffered from the adverse action before disclosure was that she did not get the job and, thereafter, did not have the means to pay for a place to live.

Mr. Bradley applied to work for O'Reilly in March 2016. Mr. Bradley was given disclosure and authorization forms, and he authorized O'Reilly to procure his background report. He was extended an employment offer conditioned on satisfactorily completing a criminal-background check. O'Reilly requested Mr. Bradley's background report through a third-party vendor, General Information Services (GIS). GIS's background report erroneously indicated that Mr. Bradley had been found guilty of stealing leased or rented property and had been sentenced to 30-day's confinement, with a suspended execution of sentence. O'Reilly informed Mr. Bradley that he would not be extended the employment offer based on information in his background report. O'Reilly also informed Mr. Bradley he could dispute the report's accuracy directly with GIS.

O'Reilly did not furnish the report to Mr. Bradley, but he requested and received the erroneous report from GIS. Mr. Bradley disputed the errors in writing to GIS. GIS corrected the errors and passed along the correction to O'Reilly, which in turn, contacted Mr. Bradley with an employment offer in May 2016. Mr. Bradley accepted the offer and worked for O'Reilly until June 2016, when he voluntarily left. Mr. Bradley testified that the harm he suffered was that he was "without a paycheck" for a period of time, that his name was tarnished, and that he was made to look like a "liar."

Mr. Saye applied to work for O'Reilly in July 2013. Mr. Saye digitally completed and signed an employment application that gave notice of the background check, and he authorized

2

O'Reilly to procure his background report. Mr. Saye's background report revealed a burglary charge and a scheduled court date for September 2013. Mr. Saye's attorney sent a letter to O'Reilly stating that the burglary charge had been dismissed on September 5, 2013, as part of a diversionary program, but that Mr. Saye was to return to court a year later, where he would be "sentenced to an infraction." Mr. Saye was not hired because of the burglary charge. Mr. Saye testified that the harm he suffered was that he did not obtain a job he expected and "slight harm" to his ego.

Mr. Estrada applied several times for employment with O'Reilly and was given disclosure and authorization forms, and he authorized O'Reilly to procure his background report. Mr. Estrada testified that he was aware that there was a disclosure in the employment-application process. Mr. Estrada was hired by and worked for O'Reilly. Mr. Estrada's employment was later terminated because he violated a company policy regarding drinks in company vehicles. Mr. Estrada testified that the harm he suffered from O'Reilly's report requests was that his credit score was negatively affected. Mr. Estrada also testified that he did not know if his credit score had actually been negatively affected. Ms. Courtright initially filed her complaint in March 2014 as a putative class action against only O'Reilly Automotive Stores, Inc., in the Jackson County Circuit Court. O'Reilly Automotive Stores, Inc., removed the action in April 2014 to the U.S. District Court for the Western District of Missouri. While in federal court, Mr. Saye joined Ms. Courtright as a plaintiff, and together they filed a first-amended complaint. The federal court consolidated Ms. Courtright's and Mr. Saye's action in March 2015 with Mr. Estrada's separate action.[1] Ms. Courtright, Mr. Saye, and Mr. Estrada moved to remand the case to the Jackson County Circuit

---

[1] Mr. Estrada's case was transferred to the U.S. District Court for the Western District of Missouri from the U.S. District Court for the Southern District of California. Count III alleges violations of California's Investigative Consumer Reporting Agencies Act (ICRAA) (Cal. Civ. Code. Section 1786 *et seq.*), and violations of California's Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code Section 17200 *et seq.*).

3

Court and, in September 2017, the federal court granted the motion. The federal court did not reach the merits of O'Reilly's summary-judgment motion, but instead declared it moot in light of the remand.

O'Reilly moved for dismissal of the first-amended complaint for lack of standing, and the Appellants moved for leave to file a second-amended complaint. The circuit court granted leave to do so in April 2018 and added Mr. Bradley as a plaintiff to the putative class action.

Appellants' second-amended complaint contains four counts. As applicable to the individually named Plaintiff's, Count I is an adverse-action claim which alleges that O'Reilly violated the FCRA by obtaining a background report and taking adverse employment action based on the contents of such report without first providing Ms. Courtright, Mr. Bradley, and Mr. Saye an opportunity to "cure any inaccuracies" within the report. Count II is a disclosure claim and alleges that O'Reilly violated the FCRA by failing to properly disclose to Mr. Saye and Mr. Estrada that O'Reilly was procuring a background report. Count II also alleges that the requisite disclosure form "was buried in a hyperlink in the application process" and that it was possible to complete the application process without clicking on the hyperlink. Count IV is an authorization claim and alleges that O'Reilly violated the FCRA by procuring background reports without proper authorization from Mr. Saye and Mr. Estrada. Count V, brought by Mr. Saye, alleges that O'Reilly violated California's Unfair Competition Law. Count V is a derivative claim from Counts I, II, and IV, alleging that O'Reilly violated California's Unfair Competition Law by violating the FCRA.[2]

---

[2] The second-amended complaint completely omits count III, which had previously alleged violations of California's Investigative Consumer Reporting Agencies Act.

4

O'Reilly filed a "motion to dismiss" in November 2018, attaching and relying on several exhibits that were outside the pleadings. O'Reilly also included a statement of facts in numbered paragraphs. Appellants opposed O'Reilly's motion by attaching and relying on several exhibits, also outside the pleadings. Appellants responded to each of the numbered paragraphs in O'Reilly's statement of facts as either "controverted," "controverted in part," or "uncontroverted." Appellants also included their own additional statement of facts in response to O'Reilly's motion.

The circuit court held oral argument in February 2019 on the motion to dismiss and granted it for lack of standing. Appellants timely appealed.

## Legal Analysis

The standard of review for an appeal from a dismissal for lack of standing is *de novo. Dunn v. Precythe*, 557 S.W.3d 454, 456 (Mo. App. W.D. 2018). Here, the trial court conducted a hearing for the motion to dismiss and considered matters outside the pleadings in making its judgment.[3] "[W]hen the parties both submit matters outside the pleadings for the court's consideration," the parties "waive notice of the court's conversion of the matter into a motion for summary judgment, and they likewise waive compliance with Rule 74.04's procedural requirements." *Lynch v. Hurley*, 569 S.W.3d 33, 39 (Mo. App. W.D. 2019) (citations omitted). Here, the parties both submitted matters outside the pleadings for the court's consideration and, therefore, they acquiesced in treating this matter as a motion for summary judgment. Under these circumstances, the motion to dismiss was converted into a motion for summary judgment, and we will review it as such. Rule 55.27(a), (b); *Naylor Senior Citizens Hous., LP v. Side Const. Co., Inc.*, 423 S.W.3d 238, 241 n.1 (Mo. banc 2014).

---

[3] At oral argument both parties agreed that the motion to dismiss was properly converted to a motion for summary judgment.

5

A party is entitled to summary judgment when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). If the [Respondents] can show that the undisputed material facts reveal that the plaintiff lacks standing, then they are entitled to judgment as a matter of law. *Id*. at 377. We make all reasonable inferences in favor of the non-moving party. *Id*. at 382.

The Appellants allege that the trial court erred in dismissing the claims in the second-amended complaint for lack of standing to bring the alleged FCRA violations because Appellant's allegations are sufficient to establish a concrete harm.

I.    Adverse-Action Claims

In the first point, Ms. Courtright, Mr. Bradley, and Mr. Saye allege the circuit court erred in dismissing count I in the second-amended complaint based on lack of standing. A party's standing to bring an action is one of the requirements of justiciability under both federal and Missouri law. *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 573-74 (Mo. App. W.D. 2017). "'Standing requires that a party have a personal stake arising from a threatened or actual injury.'" *Id*. at 574. (quoting *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013)). Appellants, as the parties seeking relief in the circuit court, "bore the burden of establishing that they had standing." *Corozzo*, 531 S.W.3d at 572. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).

6

The FCRA provides that, before taking any adverse action against a consumer based in whole or in part on the report, the employer must provide the consumer with a copy of the report and a description in writing of the consumer's rights. 15 U.S.C. § 1681b(b)(3).[4] Appellants argue three grounds to assert standing: (1) the Third and Seventh Circuit ruled that, under section 1681b(b)(3)(B)(i), a procedural violation such as a pre-adverse action sufficiently establishes standing; (2) the Eighth Circuit recognizes pre-adverse nondisclosure as an actual injury[5]; (3) adverse-action claims are consistent with the common law right of "confession and avoidance."[6]

The U.S. Supreme Court in *Spokeo*[7] addressed whether an FCRA procedural violation entails a degree of risk sufficient to meet the concreteness requirement. *Spokeo*, 136 S. Ct. at 1550. In *Spokeo*, the appellant alleged violations of the FCRA provision that requires consumer-reporting agencies to "follow reasonable procedures to assure maximum possible accuracy." *Spokeo,* 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681e(b)). The appellant alleged that he was out of work and that inaccuracies in his

---

[4] Under the FCRA, a person who willfully fails to comply with any of its requirements is liable to the consumer for, among other things, either actual damages or statutory damages of $100 to $1,000, costs of the action, attorney fees, and possibly punitive damages. 15 U.S.C. § 1681n(a).

[5] The Eighth Circuit found that "[t]he APA's procedural rules are designed to allow parties the opportunity for informed criticism and comments (citation omitted), and creating any exceptions to the procedural requirements would allow agencies to significantly alter the course of a proceeding without authorization." *Citizens Telecomm. Co. of Minn., LLC v. Fed. Commc'ns Comm'n*, 901 F.3d 991, 1005–06 (8th Cir. 2018).

[6] "An 'affirmative defense' contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility." *Peterson v. Discover Prop. & Cas. Ins. Co.*, 460 S.W.3d 393, 410 (Mo. App. W.D. 2015) (citation omitted). This common law right must be pleaded in a response pleading but the Appellant's cite no Missouri case law recognizing this right.

[7] We recognize that, after *Spokeo*, federal courts have been split on whether an allegation of a violation of a provision of the FCRA is sufficient, in and of itself, to amount to an Article III injury conferring standing.

consumer report represented "imminent and ongoing actual harm to his employment prospects," but he did not allege that any particular employer declined to hire him because of the inaccuracies. *Id.* at 1554 (Ginsburg, J., dissenting) (alterations omitted). The Court ruled that the injury was "particularized" because it "affected the plaintiff in a personal and individual way." *Id.* at 1548 (majority opinion) (citation omitted). The court emphasized, however, that particularity is not sufficient to show injury in fact; concreteness is also required. *Id.* It further explained what a concrete injury is and is not: a concrete injury is "de facto"; it "actually exist[s]," though it need not be "tangible." *Id.* at 1548-49. *Spokeo* stated that a "bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. The Court reaffirmed, however, that "the risk of real harm" can show concreteness. *Id.*

The Appellants rely on *Long v. Southeastern Pennsylvania Transportation Authority.*, 903 F.3d 312 (3d Cir. 2018), and *Robertson v. Allied Solutions., LLC*, 902 F.3d 690 (7th Cir. 2018), where the courts held that a procedural violation under the FCRA is an injury in fact sufficient to establish standing. Both circuit courts stated that section 1681b(b)(3) does not protect against adverse action based only on inaccurate information. *See Robertson,* 902 F.3d at 695; *Long,* 903 F.3d at 319. The Third Circuit held:

> Under *Spokeo's* congressional test, the FCRA clearly expresses Congress's "intent to make [the] injury redressable." Congress granted the consumer a right to receive a copy of his report before adverse action is taken, and provided for statutory damages plus attorney's fees for willful noncompliance, which Plaintiffs allege here. 15 U.S.C. §§ 1681b(b)(3), 1681n (Congress "allowed for statutory damages for willful violations—which clearly illustrates that Congress believed that the

violation of FCRA causes a concrete harm to consumers."). This harm was within Congress's power to elevate to an injury in fact. "Although it is possible to read ... *Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' ..., we do not believe that the Court so intended to change the traditional standard for the establishment of standing."

*Long*, 903 F. 3d at 323-24 (citations omitted).

The Seventh Circuit held:

An informational injury can be concrete when the plaintiff is entitled to receive and review substantive information. The Supreme Court recognized as much in *Akins*, where it held that "[t]here is no reason to doubt [that plaintiffs'] claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular." 526 U.S. at 21, 118 S. Ct. 1117. Applying that principle to our case, what matters is that [Appellant] was denied information that could have helped her craft a response to [Employer's] concerns.

*Spokeo* does not require a contrary result. There the Court hypothesized that there might not be any concrete harm when "a consumer reporting agency fails to provide the required notice to a user of the agent's consumer information, [but] that information ... may be entirely accurate." *Spokeo*, 136 S. Ct. at 1550. We put to one side the fact that this passage is probably dicta, because the case before the Court concerned inaccurate information. *Id*. at 1545. The Court never decided whether a concrete injury had been alleged. *Id*. at 1550. Furthermore, *Spokeo* was discussing a different point in the process—the relationship between an agency and a user (*i.e.* employer), not the relationship between the user and the consumer (*i.e.* the job applicant).

*Robertson,* 902 F.3d at 697.

We have also addressed the sufficiency of injuries to establish standing for FCRA violation claims. *Campbell v. Adecco USA, Inc.*, 561 S.W.3d 116, 121 (Mo. App. W.D. 2018). In

determining whether the plaintiffs in *Campbell* had standing under Missouri law, we first examined *Spokeo. Id*. We also looked to *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016), to determine whether a plaintiff asserting a violation of a statutory right had sufficiently alleged concrete injuries to establish standing under *Spokeo*.[8] *Id*. In *Campbell,* a former employee alleged that the employer violated the FCRA by failing to provide him a copy of the consumer report and the FCRA-mandated summary of rights and by failing to provide him reasonable time to address the consumer report and/or any inaccuracies within the report before terminating his employment. *Campbell*, 561 S.W.3d at 122. As for his injuries, Mr. Campbell specifically alleged that the consumer report was "not maximally accurate" and "contained errors" and, if the employer had provided him a copy of the consumer report and the summary of rights before terminating him, he "may have been able to notify [the employer] that the report was misleading and/or inaccurate," he "may have been in a position to correct information in the consumer report that appears misleading and/or incorrect," and he "may have been able to maintain his employment and/or maintain his ability to work for [the employer] at other locations." *Id*. at 122-23. We concluded:

> Campbell failed to identify what the alleged errors in the consumer report were or how those alleged errors caused him harm or presented a material risk of causing harm. As the Supreme Court noted in *Spokeo*, "not all inaccuracies cause harm or present any material risk of harm." 136 S. Ct. at 1550. Moreover, Campbell's assertion that, if he had been provided a copy of the consumer report and the summary of rights and had been able to address the alleged errors with Adecco, he "*may have* been able to maintain his employment and/or maintain his ability to work for [Adecco]," was purely conjectural and hypothetical. (Emphasis added.) "[A] speculative or hypothetical risk is insufficient" to allege a concrete injury. *Braitberg*, 836 F.3d at 930. Neither Campbell's vague assertion that the consumer

---

[8] As a state court, we are not bound by precedent from the Eighth Circuit, but we "may consider it as persuasive authority, particularly where the law at issue is a federal statute that provides concurrent jurisdiction in both state and federal courts," and that we do so for the purpose of furthering "consistency in the legal standards to be applied by our state courts and the Eighth Circuit if at all possible." *Corozzo v. Wal-Mart Stores, Inc.,* 531 S.W.3d 566, 574-75 (Mo. App. 2017) (citations omitted).

10

report was "not maximally accurate" nor his speculative contention that, absent the FCRA violations, he "may have been able to maintain his employment" alleged an injury that actually existed. Therefore, Campbell failed to allege a concrete injury sufficient to confer standing on his Adverse Action claim. The court properly dismissed this claim.

*Id*. at 123.

Applying the principles articulated in *Campbell* to this case, we look first at the sufficiency of Ms. Courtright's and Mr. Saye's allegations of injuries in the adverse-action claim. The Appellants assert that these FCRA violations resulted in an "actual injury" because they were denied the opportunity to review and dispute the contents of the consumer report before their terminations. As the Supreme Court noted in *Spokeo*;

> …Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. . . A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm.

*Spokeo*, 136 S. Ct. at 1550.[9]

Ms. Courtright and Mr. Saye did not allege that the information in their reports was inaccurate or that having more time to correct inaccuracies or information about their FCRA rights would have changed the employment action that O'Reilly took. Ms. Courtright alleged that she was harmed in that she could not afford a place to live because of the termination. Ms. Courtright's alleged harm is conjectural or hypothetical because a mere procedural violation by O'Reilly did not cause her the loss of the means to pay for a place to live, it caused her not be employed at

---

[9]Contrary to the Appellants' argument, the Eighth Circuit has not overruled or limited its holding in *Braitberg* that a bare procedural violation of a statutory duty, without resulting harm or a material risk of harm from that violation, is insufficient to confer standing. *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016). Because the Eighth Circuit's position on this issue has not changed since *Braitberg*, we see no reason not to follow the analysis set forth in *Corozzo*, which relies, in part, on *Braitberg*.

O'Reilly's Auto. Mr. Saye alleges that he lost his job and had slight harm to his ego. Mr. Saye had his attorney explain by letter to O'Reilly the circumstances of his charge, which did not change O'Reilly's decision, so any argument that he "may have been able to maintain his employment and/or maintain his ability to work for O'Reilly" is purely conjectural and hypothetical. *Campbell*, 561 S.W.3d at 123. We are not persuaded by the Third and Seventh Circuit opinions especially as applied to Ms. Courtright and Mr. Saye, because there was no risk to accuracy, relevancy, proper utilization, and fairness. Nor is this analogous to the recent Eighth Circuit APA holding in *Citizens*. Ms. Courtright and Mr. Saye failed to allege more than a mere procedural violation to establish a concrete injury sufficient to confer standing in their adverse-action claim. Point one is denied as to their adverse-action claims.

Applying the principles of *Campbell* to Mr. Bradley, however, we find an actual injury sufficient to establish standing. We find the trial court's finding too narrow in applying the relevant principles of law when it held that "[t]he clear cause of Bradley's delayed income and any alleged harm to his reputation was the inaccurate report produced by a third-party company – not Defendant's alleged non-compliance with the FCRA." *Spokeo* contemplates the plaintiff like Mr. Bradley, who experiences a concrete injury because of a procedural violation. Had O'Reilly furnished the background report to Mr. Bradley before the adverse action, as statutorily required, Mr. Bradley would have had the opportunity to dispute the errors before the employment-offer revocation. O'Reilly did not furnish the background report to Mr. Bradley; instead, it revoked the conditional offer based on inaccurate information, and Mr. Bradley had to independently retrieve the background report and correct the issues with GIS. While the false information by itself may not have created statutory damages under the FCRA,

12

the false information coupled with the employer's failure to be statutorily compliant denied Mr. Bradley the opportunity to contest that information before the adverse action; thus, the procedural violation grew into a concrete injury. The U.S. Supreme Court stressed curbing the dissemination of false information and the risk of harm due to it. *Spokeo*, 136 S. Ct. at 1550.

Mr. Bradley's evidence is distinguished from *Campbell* because there we characterized the pleading as a "vague assertion" that the consumer report was "not maximally accurate." We also noted that Mr. Campbell's alleged injury that, absent the FCRA violations, he "may have been able to maintain his employment," was speculative. *Campbell*, 561 S.W.3d at 123. It is undisputed that Mr. Bradley's assertion of the report's inaccuracy was not vague but definite, and once those disputed inaccuracies were corrected, O'Reilly did in fact offer employment to Mr. Bradley.[10] Had Mr. Bradley been afforded the opportunity to dispute the inaccuracies pre-adverse action, then his asserted harm, i.e, that he was "without a paycheck" for a period of time, would not have occurred.[11] Point one is granted as to Mr. Bradley's claim for adverse action.

II.     Disclosure and Authorization Claims

In the second point, the Appellants argue that the circuit court erred in ruling

---

[10] The Appellants, in response to the summary-judgment motion, cannot rely on mere pleadings and allegations but must set forth by affidavit or other evidence specific facts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d 351 (1992). Here, Mr. Bradley set forth the letter of termination and, deposition testimony, and O'Reilly admitted the pertinent facts in its motion to dismiss.

[11] Respondents argue that Mr. Bradley's harm of delayed income and damage to his reputation was the result of independent action by GIS, and thus such harm lacked a causal connection to O'Reilly's alleged actions. Respondent erroneously relies on an Eighth Circuit case dealing with unlawful governmental regulation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562, 119 L. Ed. 2d 351 (1992).

13

that Mr. Saye and Mr. Estrada did not have standing to bring count II and count IV of their second-amended complaint, which alleged "disclosure" claims and "authorization" claims respectively.[12] The Appellants argue that under *Campbell* and *Corozzo,* the allegations are sufficient to establish standing. Appellants are incorrect, however, in applying the standard of review from the cases that were reviewed for motions to dismiss rather than cases dismissed on summary judgment. In *Campbell* and *Corozzo*, we determined standing as a matter of law by examining the petition "along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued" and by construing the pleadings liberally, accepting all alleged facts as true and construing them in a light most favorable to the pleader. *Corozzo,* 531 S.W.3d at 572. As noted above, the parties both submitted matters outside the pleadings for the court's consideration and therefore acquiesced in treating this matter as a motion for summary judgment. A party is entitled to summary judgment when there is no dispute of material fact and the movant is entitled to judgment as a matter of law." *ITT Commercial,* 854 S.W.2d at 377.

> In response to summary judgment motion, however, plaintiff can no longer rest on such mere allegations but must set forth by affidavit or other evidence the specific facts which for purposes of summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

---

[12] This point relied on "is impermissibly multifarious, as it raises multiple, discrete complaints, that are required by Rule 84.04(d)(1)(A) to be asserted in separate points on appeal. Multifarious points on appeal preserve nothing for appellate review." *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 96 n.4 (Mo. App. W.D. 2015). "Failure to comply with Rule 84.04 merits dismissal." *Anderson v. Am. Family Mut. Ins. Co.*, 173 S.W.3d 356, 357 (Mo. App. W.D. 2005). "We have the discretion to review non-compliant briefs ex gratia where the argument is readily understandable. But we cautiously exercise this discretion because each time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not." *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (internal citation omitted). However, this Court "prefers to dispose of cases on the merits if it can discern the argument being made." *Hink v. Helfrich*, 545 S.W.3d 335, 338 (Mo. banc 2018). Because we can readily discern the arguments made by Appellants, we proceed to review *ex gratia*.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, the Appellants only presented evidence that applicants would not have been provided with a disclosure or given an authorization from January 2013 through March 2014 unless they clicked the hyperlink within the Respondents' employment application. The Appellants failed to dispute the material fact of whether Mr. Saye and Mr. Estrada received the requisite disclosure or authorization forms by clicking or not clicking the link. In contrast, Mr. Saye completed an employment application and signed with a digital signature that gave notice of the background check and Mr. Estrada testified that he was aware of the disclosure during the employment application process. Further, Appellant's counsel conceded during oral argument that Mr. Saye and Mr. Estrada did receive notice of the background check during the application process. Point two is denied.

III.    Derivative Claims

In the third point, the Appellants argue that the circuit court erred in dismissing count III and count V of the second-amended complaint, which alleged California state law claims derivative of the FCRA for adverse action, and disclosure and authorization. This point, like point II, is multifarious. Count III of the Appellants' first-amended complaint alleged violations of California's Investigative Consumer Reporting Agencies Act (ICRAA). Count III was abandoned, however, in the second-amended complaint and is thus unpreserved for this Court's review. "By filing an amended pleading, a plaintiff generally abandons his former pleadings and those pleadings may not be considered for any purpose afterward." *Johnson v. GMAC Mortg. Corp.*, 162 S.W.3d 110, 115 (Mo. App. W.D. 2005). Missouri law requires parties to give the trial court an opportunity to correct the error alleged. The record reflects that the Appellants

did not plead count III in the second-amended complaint thereby abandoning it, thus giving the trial court no reason to consider it in the motion to dismiss. Therefore, this issue has not been preserved for review for two violations of Rule 84.04. This Court has discretionary authority to review an unpreserved issue for plain error. *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014). Under these facts, we elect not to review this argument concerning the ICRAA for plain error as nothing in the record facially establishes substantial grounds for us to believe that evident, obvious and clear error has occurred or that a manifest injustice or a miscarriage of justice has resulted. *Id*.

Count V alleges violations of California's Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code Section 17200 *et seq*.) The Appellants argue that if Mr. Saye has standing under the FCRA or ICRAA, their derivative claims under the UCL should also survive. For the reasons stated earlier in this opinion we do not find that Mr. Saye had standing under the FCRA, and standing under the ICRAA was not preserved. This point is denied.

### Conclusion

We find that the trial court erred in determining that Mr. Bradley did not have standing to present the adverse-action claim. We find that the trial court did not err in granting summary judgment on all other counts of the second-amended complaint. We remand for further proceedings consistent with this opinion.

/s/ *Thomas H. Newton*
Thomas H. Newton, Judge

Cynthia L. Martin, P.J., and Gary D. Witt, J. concur.

16